## Cramer-Sherr Building & Loan Association's Case.

Argued April 8, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*George J. Mallen,* Special Deputy Attorney General, with him *Russell C. Wismer, Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*David B. James, Jr.,* with him *S. Lloyd Moore,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 24, 1940:

This appeal is from the dismissal by the court below of exceptions filed by appellant, John C. Bell, Jr., Secretary of Banking of the Commonwealth of Pennsylvania, to the adjudication of his first and partial account as receiver of the Cramer-Sherr Building and Loan Association.

Charles H. Lapidus, who was then Secretary of the Cramer-Sherr Association, on October 29, 1928, by writing under seal, assigned to the National Security Bank, as collateral security for loans to himself individually and to Charles H. Lapidus, Inc., $6,099.82 of which remain due and unpaid, 35 shares of the capital stock of the Association standing in his name and represented by certificates or books Nos. 10-D, 163, 233, 285, and 2601. Contemporaneous with the delivery of this assignment Lapidus also delivered to the bank these stock books or certificates and a letter, dated October 29, 1928, signed by him as Secretary of the Association, written on the stationery of the Association and bearing its corporate seal, which letter acknowledged the assignment and certified that Lapidus was the owner of the shares so assigned and that they were free shares

with no loans against them. It appears, however, that the shares represented by books Nos. 10-D and 163 had already been assigned to the Association as security for stock loans, prior to the assignment to National Security Bank. The only notation in the Association's books pertaining to the assignment by Lapidus to the bank, on October 29, 1928, is a notation made in the Roll Book for 1928 referring solely to book No. 233.

Subsequent to the actual assignment to the National Security Bank, Lapidus either assigned books Nos. 233, 285 and 2601 to the Association, or it made stock loans to him, without assignment, on the credit of the shares represented by those books. All of the books have remained in the possession of the bank since October 29, 1928, the date of the assignment by Lapidus to it. Lapidus continued in the position of Secretary to the Association until November 8, 1935, when the Secretary of Banking took possession of the business and property of the Association for purposes of liquidation.

Appellees, trustees for depositors and stockholders of the Kensington Security and Trust Company, successor to the National Security Bank, filed a claim with the deputy receiver of the Cramer-Sherr Association to be recognized as the holder of the stock represented by the certificates or books in their possession. This claim the receiver disallowed in his first and partial account, on the ground that the proceeds of all of the shares had been applied to stock loans owing by Lapidus to the Association. After hearing upon exceptions filed by appellees to this action of the receiver, the court below filed its adjudication, sustaining appellees' exceptions as to books Nos. 233, 285 and 2601, and dismissing them as to books Nos. 10-D and 163. This appeal is from the final decree of the court below dismissing appellant's exceptions to its adjudication as to books Nos. 233, 285 and 2601.

The court below took the position that while as to books Nos. 10-D and 163, those assigned to the Associa-

tion prior to October 29, 1928, and applied by it to loans made prior to that date, appellees have no rights, as to the remaining three books, the proceeds of which have been applied to the payment or reduction of stock loans made subsequent to the assignment to National Security Bank, and the only ones with which we are concerned on this appeal, appellees' rights are superior to those of appellant, as receiver of the Association, and granted appellees the status of creditors, without interest, as to $2,000, the matured value of book No. 233, which matured in April of 1931, and the status of shareholders as to the paid in value of books Nos. 285 and 2601 in the respective amounts of $700 and $730.

The sole question before us for determination on this appeal, according to appellant's "Statement of Question Involved," is the following: "Is a letter, written by a secretary of a building and loan association acknowledging receipt of an assignment of shares, of which he was the owner, notice to the building and loan association where the letter was sent by the secretary acting in his own interest and adversely to that of the building and loan association?"

It is appellant's position that the rights of appellees with respect to the shares represented by books Nos. 233, 285, and 2601 are not superior to his as receiver of the Cramer-Sherr Association for the reason that no legally sufficient notice of the assignment of October 29, 1928, by Lapidus to the National Security Bank, was ever given the Association. On this point the court below said: "It is true that in the ordinary course of events, the Building Association should have been notified of this assignment and the same should have been noted in the books of the Association, but claimant was relieved of any further duty of notification by receipt of a letter signed by the Secretary of the Building Association acknowledging the assignment. When those books were later assigned to the Building Association for subsequent stock loans they had already been fully

assigned to claimant, and Lapidus had nothing left which he could assign to the Building Association. The fraudulent or mistaken act of Mr. Lapidus in borrowing on these books from the Association when he no longer owned them can not destroy the rights of claimants, particularly in view of the official position occupied by Lapidus in the Building Association and his knowledge of the prior assignment to National Security Bank."

Contending, as he does, that failure of National Security Bank to give legally sufficient notice of the assignment should be held to defeat appellees' rights, appellant invokes the familiar rule that "a principal is not visited with notice through an agent where the agent at the time is acting adversely to his principal and where it would be to the interest of the agent not to disclose his action or information to the principal." Assuming that notice was necessary, appellant's position overlooks that the shares with which we are here concerned were in fact free shares at the time of their assignment to the bank; also that, as appellant admits, the assignment of the shares represented by book No. 233 was shown to have been noted in the Association's Roll Book for 1928, and the further fact that the evidence establishes that the Association had knowledge of the assignment through another of its officers, to wit, its solicitor. However, it is clear under the decisions about to be referred to that whether notice was in fact given, and consequently whether the circumstances relied upon by appellees as constituting notice were legally sufficient for that purpose, is immaterial, under the facts of this case.

In *Citizen's National Bank of Irwin v. Irwin Building & Loan Ass'n,* 316 Pa. 536, one Jones died owing the appellant bank in that case the sum of $14,450, evidenced by collateral notes as security for which Jones had assigned certain certificates of stock in the appellee Building and Loan Association. Payment of the indebtedness having been refused by Jones' executrix, the stock was

offered for sale in accordance with the provisions of the collateral notes and was purchased by the bank. A demand upon the appellee Association for new certificates in the bank's name was refused, whereupon the bank petitioned for a writ of mandamus compelling the Association to issue proper certificates. The petition was resisted on the ground, inter alia, that the certificates held as collateral were not transferred in accordance with the by-laws of the Association, but the court below awarded a mandamus as prayed for. On appeal to this Court the action of the court below was sustained in an opinion by Mr. Chief Justice FRAZER wherein he said, at 539: "The building association stock belonged to Jones, was his personal property, and he certainly had the right to use the certificates as collateral security for his indebtedness without consent of the association . . . The by-law relating to assignment and transfer of stock is a regulation among stockholders and is not applicable here . . . *The association, subsequent to issuing the stock certificates, having made loans to Jones on the credit of those certificates without requiring their production and assignment to the association, and Jones having previously made a bona fide pledge of the certificates, to secure an indebtedness due the bank, the association and not the bank, an innocent creditor, must suffer.*"

*Chambers v. Bradford Building Loan & Savings Ass'n,* 55 Pa. Superior Ct. 444, is likewise directly in point here. There one Eckhart, on June 19, 1907, assigned and delivered the certificate representing certain building and loan shares to one Chambers, as collateral security for an indebtedness. Transfer of this stock to Chambers upon the Association's books was resisted on the ground that since, at the time the stock was assigned to Chambers, Eckhart was indebted to the Association, and being so indebted consented, on January 6, 1908, that the stock should be transferred and charged up against his indebtedness to the Association, the Asso-

ciation, *having no notice of the prior assignment to Chambers,* took title to the stock absolutely. The Superior Court dismissed this contention, saying, at 445: "Eckhart had already assigned in blank and delivered the certificate to Chambers. He could not then, by any agreement with the company, take away the title which he had invested in Chambers and transfer it to the company by any such agreement. If he had possession or could have gotten possession of the certificate and had surrendered it or delivered it to the company with a blank assignment, then another question would have arisen."

These decisions rule the present case adversely to the contentions of the appellant. See also *Palmer et al. v. Dela. Co. Bldg. Ass'n,* 101 Pa. Superior Ct. 370, 374, and *Commonwealth v. Clement,* 94 Pa. Superior Ct. 460.

Decree affirmed, costs to be paid out of funds in the hands of appellant as receiver of the Cramer-Sherr Building and Loan Association.